## In re L. B. WEISENBERG & CO.

### (District Court, E. D. Kentucky. February 25, 1904.)

### No. 340.

1. BANKRUPTCY—PARTNERSHIP—JOINT DEBTS OF PARTNERS.

Under Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424], joint debts of partners composing a bankrupt partnership cannot be proved against the partnership estate, to share on an equality with firm creditors.

2. SAME—JOINT NOTES OF PARTNERS—EVIDENCE TO SHOW LIABILITY OF FIRM.

Parol evidence is admissible to show that joint notes signed by the members of a bankrupt partnership are in fact firm debts.

3. SAME—EVIDENCE CONSIDERED.

A bank made a loan of money to each of the two members of a partnership, taking in each case a note signed by both partners. The proceeds were passed to the individual accounts of the partners, respectively, and were by them checked to the partnership account and used in the firm business. Held, that the notes did not constitute debts of the firm provable against its estate in bankruptcy; it having received the money from the partners, and not from the bank.

4. SAME—EVIDENCE—MATERIALITY.

The testimony of the cashier of a bank that loans made by the bank on notes signed by members of a bankrupt partnership were made to the firm, and not to the partners, is not admissible to establish such fact, which must be determined from the facts of the transaction, and not from the intention of the witness.

In Bankruptcy. On review of decision of referee.

Frank Chinn, for Deposit Bank of Frankfort.

T. N. Lindsey, for appellees.

COCHRAN, District Judge. The bankrupt L. B. Weisenberg & Co. was a firm engaged in the business of buying and selling wheat at Frankfort, Ky., composed of the bankrupts L. B. Weisenberg and A. Dudley Blanton. January 24, 1903, the Deposit Bank of Frankfort, a corporation engaged in the banking business at said place, discounted two joint notes of said Weisenberg and Blanton—one for $15,000 and the other for $10,000, both due 60 days after date, and negotiable and payable at said bank, which discounting placed them on the footing of a bill of exchange. The only difference between the two notes, other than as to the amount, was that the largest one was signed by Weisenberg first, and the smallest by Blanton. The bank presented these two notes to the referee for allowance as claims against the estate of said firm, asserting in the affidavit that they were firm debts. This application was resisted by firm creditors, and, after hearing evidence in relation to the matter, the referee denied the application, and refused to allow said notes as firm debts. In his opinion the referee gave two reasons for his action. One was that said notes, on their face, were the joint debts of the members of the firm, and parol evidence was inadmissible to prove that they were firm debts. The other was that they were in

¶ 2. See Evidence, vol. 20, Cent. Dig. § 1909.

fact joint, and not firm, debts. The matter has been brought before me for review.

It is certain that if, for either reason, the notes in question must be treated as joint debts, they cannot be allowed as valid claims against the firm assets, on a par with firm creditors. In re Webb, Fed. Cas. No. 17,313, vol. 29, p. 493; In re Roddin, Fed. Cas. No. 11,989, vol. 20, p. 1084; In re Nims, Fed. Cas. No. 10,268, vol. 18, p. 254; In re Nims, Fed. Cas. No. 10,269, vol. 18, p. 255.

In the case of Forsyth v. Woods, 11 Wall. 484, 20 L. Ed. 207, Mr. Justice Strong said:

"It is not certain that a promise by a partnership and a promise by the individual partners collectively have the same effect. If a firm be composed of two persons associated for the conduct of a particular branch of business, it can hardly be maintained that the joint contract of two partners, made in their individual names, respectively, on a matter that has no connection with the firm business, creates a liability of the firm as such. The partnership is a distinct thing from the partners themselves, and it would seem that the debts of the firm are different in character from other joint debts of the partners. If it is not so, the rule that sets apart the property of a partnership exclusively in the first instance for the payment of its debts may be of little value. That rule presumes that a partnership debt was incurred for the benefit of the partnership, and that its property consists, in whole or in part, of what has been obtained from its creditors. The reason of the rule fails when a debt or liability has not been incurred for the firm, as such, even though all the persons who compose the firm may be the parties to the contract."

The Nims Case arose under the bankruptcy act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517). There certain individuals had carried on a certain business as partners under a certain name, and failed. Afterwards they carried on another business as partners under another firm name. The members of the two firms then went into bankruptcy. The last firm had assets. The first had none. The question was whether the creditors of the first firm were entitled to share in the assets of the last firm, pari passu with its creditors. Judge Wallace, in the District Court, held that they were. He placed his decision on the broad ground that joint creditors were entitled to share equally in firm assets with firm creditors. He said:

"Neither section 5121 of the Revised Statutes, nor the rule of equitable distribution which that section is intended to adopt, precludes the creditors of the bankrupts jointly from resorting to any firm assets of the bankrupts which may exist."

As to section 5121 of the Revised Statutes, he said:

"The language of section 5121 does not in terms prescribe the rule of distribution when debts are proven against the bankrupts jointly which are not partnership debts, but it deals only with the mode of distribution as between partnership creditors and creditors of the partners separately."

As to the rule of equitable distribution, he argued that it did not preclude such resort, because it was not within the purview of the reason which led to the adoption of that rule. He claimed that it did not originate in the presumption that a partnership debt was incurred for the benefit of the partnership, and that the property consists, in whole or in part, of what has been obtained from creditors, and is therefore considered as a primary fund for the payment of such debts, and said that, "after a very careful reading of the books," he had been "unable to

find any case in this country or in England" that had advanced the view that it did so originate, "except the dictum in Forsyth v. Woods, 11 Wall. 486, 20 L. Ed. 207," above quoted. He gave as a reason for so claiming the fact that partners might during the continuance of the partnership, by agreement, convert the partnership estate into separate estate, and thereby determine its character for the purpose of distribution. He said:

"Accordingly, when one partner without fraud sells out to the other, the property becomes separate property, and the creditors of the firm are postponed to the separate creditors of the purchasing partner. If the rule of distribution is founded on the theory that the fund which is derived from the creditors is primarily the fund for their payment, and the law therefore appropriates it to them, it could not be permitted that the debtors themselves, by agreement, should defeat that result."

As to the reason for the rule, and the effect thereof on its scope, he said:

"The principles of distribution in equity have their origin in the rights of creditors at law. At law the creditors of the firm may resort in the first instance to the separate as well as to the joint property of the partners, while the separate creditors of a partner cannot resort effectually to the joint property, because upon an execution they can reach only the interest of the partner, and are thus obliged to invoke the aid of a court of equity to ascertain it through an accounting, in which case the creditors of the firm must first be satisfied, and thus obtain a priority as to the joint assets. But suppose an execution to be levied in favor of a creditor against all the members of the firm upon the joint debt, but not a partnership debt. Here the sale would carry the title of all the partners, and the creditors would not be under the necessity of having an accounting or invoking the assistance of a court of equity. There would thus appear to be a solid distinction between the rights of a creditor of all the partners and those of one or more partners in the joint property, as respects the partnership creditors, and the case would arise for the application of the equitable rule which postpones the separate creditor to the partnership creditor in the joint assets."

The order of the District Court was carried to the Circuit Court for review, and there reversed. Judge Blatchford conceded that the rule of equitable distribution was as held by Judge Wallace. He said that it was—

"A general equitable idea that creditors of joint debtors who were in fact partners should be allowed to share in the assets of the partnership, although not creditors of the partnership, or in respect to any matter growing out of or connected with the partnership."

And further:

"Hence the decisions in England, of which the case of Hoare v. Oriental Bank Corp., 2 App. Cas. 589, is a recent instance, holding that a joint debt not shown to have been incurred as a partnership transaction could be proved against the partnership estate where the partners were the joint debtors. In this last case it was suggested as a ground for allowing the proof that the creditors could, before the insolvency, have sued the debtors composing the partnership jointly upon the obligation held by him, and, upon recovering judgment, have taken out execution against the partnership assets."

But he held that the relevant provision of the bankruptcy statutes (section 5121, Rev. St.) prohibited the application of this rule of equitable distribution to bankruptcy cases. It not only dealt with the mode of distribution as between partnership creditors and creditors of the partners, separately, but, in prescribing that the "net proceeds of the

joint stock shall be appropriated to pay the creditors of the copartnership," impliedly negatived that joint creditors should participate in partnership assets along with firm creditors. He said:

"The rule of distribution prescribed by this section is very distinct. It is arbitrary, like many other provisions of the bankruptcy statute, but it must be followed, and cannot be made to yield to any supposed equities in favor of any other rule of distribution."

And again:

"This rule of distribution is a statutory one, and applies only to partnership assets, which remain such, to be administered in bankruptcy. There never was any statute in England in terms like our statute during the time the English decisions referred to were made."

And again:

"The provisions of our bankruptcy statute on the matter in hand are like those of the Massachusetts insolvency law of 1838, p. 97, c. 163, § 21. Under that law it was held in Ex parte Weston, 12 Metc. 1, that only partnership debts could come against partnership assets."

As to the alleged dictum in Forsyth v. Woods, he said:

"The remarks of Mr. Justice Strong in Forsyth v. Woods are not understood to go any further than to say that, under the bankruptcy statute, if there are partnership debts and partnership assets, it will be presumed that such assets were obtained from the partnership creditors, so that, if such assets remain to be administered in bankruptcy, they shall be applied first to pay debts of the partnership."

The relevant provision of the present bankruptcy act is substantially the same as that of the act of 1867, and, of course, the same rule as to distribution must prevail under it as prevailed under that.

It is therefore essential, in order for the Deposit Bank of Frankfort to be entitled to share in the firm assets herein, that it had a right to show that the joint notes held by it were firm debts, and that it has shown that in fact they were firm debts. And first is the rule that parol evidence is inadmissible to add to, vary, or contradict the terms of a written contract in the way of the bank having that right, as the referee held. There is a rule in relation to negotiable instruments that may be confused with this rule against parol evidence, and, owing to a misapprehension as to its scope, be thought to preclude the bank from having such right. That rule is that none but parties to a bill or note can be a party to an action on it. It is laid down by Judge Metcalf in the case of Fuller v. Hooper, 3 Gray, 341, in the following language:

"The rule is general, if not universal, that neither the legal liability of an unnamed principal to be sued, nor his legal right to sue on a negotiable instrument, can be shown by parol evidence. When an agent signs such an instrument without disclosing his agency on its face, the holder must look to him alone. And when such an instrument, which is intended for the benefit of the principal, is given to the agent only, he only, or his indorsee, can sue on it. In other simple contracts the rule is different."

And by Judge Prentiss in the case of United States Bank v. Lyman, 20 Vt. 666, Fed. Cas. No. 924, in the following language:

"Upon the whole, it appears to me that the true rule of law, as deducible from the adjudged cases—American as well as English—is that no person, although in fact a principal or partner, can sue or be sued upon a bill or negotiable note unless he appears upon its face to be a party to it. A promissory note, according to the expressions of very great judges, partakes in some

measure of the nature of a specialty, importing a consideration and creating a debt or duty by its own proper force. Being assignable and passing by mere indorsement, it is necessary that the parties to it should appear and be known by bare inspection of the writing, for it is on the credit of the names appearing upon it that it obtains circulation. It is for these qualities, and on these considerations, that it is distinguished from written simple contracts in general, and made subject to a different rule."

And by Lord Justice James in the case of In re Adansonia Co., L. R. 9 Ch. 635, in the following language:

"Now, it is the law of this country, and it has always been the law of this country, that nobody is liable upon a bill of exchange unless his name, or the name of some partnership or body of persons of which he is one, appears either on the face or the back of the bill."

This rule has been applied to a case where one partner of a firm duly executed a negotiable instrument on behalf of the firm. In the case of Siffkin v. Walker, 2 Camp. 550, a firm composed of two members was indebted to another. One partner gave his note to the creditors for the debt. The latter sued both partners on the note. It was held that this could not be done, and plaintiff was nonsuited. Lord Ellenborough said:

"The import and legal effect of a written instrument must be gathered from the terms in which it is expressed, and I must treat this note as a separate security for a joint debt."

This rule, however, is not the same as the rule against parol evidence, nor is it a specialization of that rule. For it is settled that in the case of other simple contracts in writing—assuming for the time being that bills and notes are simple contracts, as is assumed in certain of the foregoing quotations and in that about to be made—persons other than the parties to them can sue or be sued on them, notwithstanding the rule against parol evidence. In the case of Nash v. Towne, 5 Wall. 689, 18 L. Ed. 527, Mr. Justice Clifford said:

"Where a simple contract, other than a bill or note, is made by an agent, the principal whom he represents may, in general, maintain an action upon it in his own name; and parol evidence is admissible, although the contract is in writing, to show that the person named in the contract was an agent, and that he was acting for his principal. Such evidence, says Baron Parke, does not deny that the contract binds those whom on its face it purports to bind, but shows that it also binds another, and that principle has been fully adopted by this court. N. J. Steam Nav. Co. v. Merch. Bk., 6 How. 381, 12 L. Ed. 465; Ford v. Williams, 21 How. 289, 16 L. Ed. 36; Oelricks v. Ford, 23 How. 63, 16 L. Ed. 534. Cases may be found, also, where it is held that the plaintiff may prove by parol that the other contracting party named in the contract was but the agent of an undisclosed principal; and, in that state of the case, he may have his remedy against either at his election. Thomas v. Davenport, 9 Barn. & C. 78. Evidence to that effect will be admitted to charge the principal, or to enable him to sue in his own name; but the agent who binds himself is never allowed to contradict the writing by proving that he contracted only as agent, and not as principal. 1 Pars. Cont. (5th Ed.) 64; Jones v. Luttledale, 6 Ad. & E. 486; Titus v. Kyle, 10 Ohio St. 444; 2 Sm. Lead. Cas. (6th Am. Ed.) 421."

If this is true as to simple contracts in writing, other than bills and notes, no good reason can be given why the rule against parol evidence should prevent its being true as to bills and notes, on the basis that they are simple contracts. The rule in question therefore must be accounted for on some other ground than that it is identical with, or an out-

growth of, the rule against parol evidence. The rule is due to the fact that bills and notes are not simple contracts at all, as has been assumed, but specialties, and one of the characteristics of a specialty is that none but parties thereto can be parties to an action thereon. That such is the true nature of bills and notes is laid down in 2 Ames, Bills & Notes, p. 872. It is there said:

"There are two classes of specialty contracts in the English law—common-law specialties and mercantile specialties. The first class includes bonds and covenants, i. e., instruments under seal; the second class includes bills and notes and policies of insurance, and possibly other mercantile instruments. There is a prevalent notion, traceable to an opinion given in the House of Lords in 1778, in the case of Rann v. Hughs, 7 T. R. 350, that only contracts under seal can be specialties; all other contracts, whether written or oral, being merely simple contracts. The fallacy of this notion is easily demonstrable by an examination of the resemblances between bills and notes and instruments under seal, on the one hand, and the differences between bills and notes and simple contracts, on the other hand, in those points in which specialties and simple contracts most strikingly differ."

Of the eight points of resemblance on the one hand, and difference on the other hand, stated, the first one is that none but parties to a bill or note can be a party to an action thereon. This rule, however, did not preclude the bank from the right of showing that the two notes in question were firm debts, and having them allowed against firm assets. If this were an action at law on these notes, none other than the parties thereto would be parties to the action. The question whether they were firm notes or not would cut no figure therein. An execution upon a judgment recovered would be leviable upon the firm assets. And had they been firm notes executed in the firm name, the course of procedure would not have been different. Hence no occasion would have arisen therein calling for the application of the rule, or even for the consideration of the question as to its application. It certainly can have no bearing in this proceeding. In the case of Ex parte First National Bank, 70 Me. 369, Judge Peters said:

"It is said that an objection to this doctrine is the rule of law that oral evidence is not admissible in cases of commercial paper to prove any person a party to a bill or note who does not appear to be such upon the face of the paper itself. But equity looks more to the fact than to the form, and the rule of distribution incorporated into our insolvent law is one incorporated from the principles and practice of courts of equity. * * * The cases in which the strict legal view has been upheld will be found to be mostly actions at law, where the effort has been by the holders of a bill or note to fix the liability upon some defendant whose name was in no manner written or indicated on the instrument itself, or where the facts differ in some other essential respects from the facts of the present case. Here the names of both partners are upon the note. Both are holden thereon."

Having thus distinguished this rule from that against parol evidence, and shown that it did not affect the bank's right in question, it is in order to recur to the question whether the rule against parol evidence affected it. It has been pointed out that it is not a violation of that rule to add a party to a contract in writing, either as obligee or obligor, to the extent laid down in the case of Nash v. Towne. If this is so, it is hardly a violation thereof to show in this proceeding that the joint liability of the two members of the firm of L. B. Weisenberg & Co. was in fact the liability of the firm. Again, it is well settled that one partner

has an implied authority to sign the firm name to negotiable paper for partnership purposes. This authority goes no further than to sign the firm name thereto. He cannot execute such paper upon behalf of the firm, even though for partnership purposes, in any other name. Hence it was held in the case of Kirk v. Blurton, 9 M. & W. 284, that, where John Blurton and Charles Habershon were partners doing business under the firm name of John Blurton, Blurton was not liable upon a negotiable instrument executed by Habershon on behalf of the firm, for partnership purposes, in the name of John Blurton & Co. Yet it is held that a partner may execute such paper under such circumstances, and sign the individual names of all the partners thereto, and they will be bound thereby. Galaway v. Mathew, 1 Camp. 403. This could hardly be the case if parol evidence was inadmissible to show that a written contract so executed was a firm contract. Besides, I know of no authority making such an application of the parol evidence rule.

My conclusion, therefore, is that the bank had a right to show, if it could, that the joint notes held by it were the firm debts of the bankrupt firm of L. B. Weisenberg & Co. Did it show that said notes were in fact firm debts? There is a difference in the authorities as to whether the joint notes of the members of a firm executed in the strict partnership business for a consideration passing to the firm, nothing else appearing, are to be treated as debts of the individuals, or of the firm. In the following cases they were held to be debts of the individuals, to wit: In re Bucyrus Machine Co., Fed. Cas. No. 2,100; In re Holbrook, Fed. Cas. No. 6,588; In re Herrick, Fed. Cas. No. 6,420; Strause v. Hooper, 5 Am. Bankr. Rep. 225, 105 Fed. 590; In re Jones, 8 Am. Bankr. Rep. 626, 116 Fed. 431. The doctrine of these cases is approved in Collier on Bankruptcy (4th Ed.) 72, and in a note to the case of Strause v. Hooper by the author of that work—possibly, also, by Bump & Loveland in their works on Bankruptcy. Possibly the Holbrook Case is to be distinguished by the fact that the note in that case was signed also by other individuals, not members of the firm, as sureties, and it was the joint and several note of all, and not the joint note of less than all. Possibly, also, the Herrick Case is to be distinguished by same consideration. In the following cases the joint notes were held to be firm debts, on the ground that they were executed in the partnership business, and for a consideration passing to the firm, to wit: In re Warren, Fed. Cas. No. 17,191; In re Thomas, Fed. Cas. No. 13,886; Davis v. Turner, 9 Am. Bankr. Rep. 704, 120 Fed. 605, 56 C. C. A. 669. The same thing has been held in quite a number of state decisions, most of which have been cited by the counsel for the bank. And I think that it may be correctly said that the decided weight of authority is to that effect.

But I do not find it necessary in this case to choose between these contending authorities. There are facts in it which differentiate it from those authorities, and which, in my opinion, require that it should be held that these notes were in fact the debts of the bankrupts Weisenberg and Blanton, and not of the bankrupt Weisenberg & Co. It started out to be a single partnership transaction, but turned out to be two individual transactions. The bankrupt firm applied to the bank for a loan of $25,000. This application the bank, however, declined

to grant. It did so because it considered that, under the laws of this state, it had no right to make the loan. The amount was in excess of what it could loan the said firm, according to its understanding of its powers. It proposed, however, to loan $15,000 to Weisenberg, with Blanton as surety, and $10,000 to Blanton, with Weisenberg as surety, which it considered it had a right to do. This proposal was accepted, and in pursuance thereto the notes in question were executed and discounted. The proceeds of one note was placed to Weisenberg's credit, and that of the other to Blanton's. It is true that thereupon, perhaps immediately, each partner checked the amount to his credit to the firm. But the firm got the money, not from the bank, but from the members of the firm to whom the bank loaned it. No such condition of things as this existed in any of the authorities cited by counsel for the bank. They were all cases where the loan was made to the firm, and the consideration passed directly to it from the lender. The only case which comes any way near to it is the case of Kendrick v. Tarbell, 26 Vt. 416, where the note in question was executed in the names of the individuals composing the firm at the request of the payee. But the loan was made to the firm, and passed to it directly from the payee. Here the notes were not only executed in the names of Weisenberg and Blanton, but the loan, as to one note, was made to Weisenberg, and as to the other to Blanton, and not to the firm, and the proceeds passed from the bank to said members of the firm, and not to the firm. Suppose the individual assets had been greater than the firm assets, instead of the reverse, so as to have made it to the bank's interest to prove the notes against the individuals, and not against the firm. Would it not have proved them against the former assets, and would not the facts above referred to have entitled it so to do? I think so. Besides, there does not seem to be any equity in the bank's position herein, on the ground that its money went towards swelling the firm's assets on hand for distribution. It is shown by the evidence, and seems to be conceded, that nearly the whole of the proceeds were lost in futures. I feel constrained, therefore, to hold that the ruling of the referee as to said notes not being firm liabilities is correct.

Then, as to his refusal to permit Mr. Nicol, the cashier of the bank, to answer the questions as to whom he gave credit for the $25,000, and to whom he looked for payment thereof, which is complained of. I do not think that the referee erred in this particular. The question as to whom credit was given, and from whom payment was expected, could be determined only from the facts of the transaction; i. e., what was said and done before and at the time the notes were executed and discounted. It would not be affected by any testimony of Mr. Nicol as to what his notions in regard to the matter were. The probability is that the main, if not sole, reliance, was placed on the warehouse receipt which was pledged as collateral security, and which is conceded to be void.

The decision of the referee is affirmed.