FREDERICK v. CITIZENS' NAT. BANK.

In re STEVENSON et al.

(Circuit Court of Appeals, Third Circuit. April 4, 1916.)

No. 2067.

1. BANKRUPTCY ⟨⟩309—PARTNERSHIP—PROVABLE CLAIMS.

Notes for borrowed money may be proved against the estate of a partnership in bankruptcy, although signed by individual members of the firm, where the money was in fact borrowed and used for the benefit of the firm, and it was the understanding of both borrower and lender that the notes were firm obligations.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555–564; Dec. Dig. ⟨⟩309.]

2. BANKRUPTCY ⟨⟩330—PROOF OF CLAIMS—SPLITTING INDEBTEDNESS.

Where a creditor holds more than one note against a bankrupt, they should be proved as a single claim, and if proved separately the claims will be treated as one.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 517, 519, 521; Dec. Dig. ⟨⟩330.]

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ⚖467—APPELLATE PROCEDURE—GENERAL ORDER ALLOWING CLAIMS.

Although a court of bankruptcy allowed a number of claims by a single general order, for the purposes of an appeal such order must be treated as several.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⚖467.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of William Stevenson and John J. Stevenson individually, and the firm of Stevenson, Titus & Co., bankrupts. From an order allowing claims, Elliott Frederick, trustee in bankruptcy, appeals. On motion to dismiss. Motion overruled, and order affirmed.

The following is the opinion of Orr, District Judge:

This matter comes before the court upon a petition to review an order of the referee sustaining objections to eleven claims filed against the partnership, and disallowing participation of said claims in the dstribution of the partnershp assets of the bankrupts.

The claims are all based upon obligations commonly called judgment notes. Each is an absolute promise to pay a sum therein named, within a period therein limited, to the order of the payee. Each contains in addition thereto a warrant of attorney authorizing the confession of judgment, and each is under the seal or seals of the maker or makers. All of the notes, except the note held by H. F. Hoffarth, hereinafter mentioned, are signed by all the individuals composing the partnership, and to several of the notes there is in addition the signature of a surety, and the signature of an individual who was at the date of the notes a member of the copartnership, but who, subsequent to the making thereof, died. The Hoffarth note was signed by one of the partners, John J. Stevenson only. None of the notes have any reference, either on the face or by indorsement, to the partnership, Stevenson, Titus & Co.

The proofs filed by the holders of said notes, with the exception of three hereinafter noted, expressly state in somewhat various forms that the consideration of the debt is for money borrowed for partnership purposes.

The claim filed by Maude Stevenson contains the averment that Stevenson, Titus & Co. was indebted to the deponent and that the note was given for borrowed money.

In the claims filed on behalf of George R. Rinehart and A. G. Titus, there is the averment that William Stevenson and John J. Stevenson, individually and trading as Stevenson, Titus & Co., are indebted to the deponent upon a judgment note given for borrowed money.

To each of said claims the trustee filed an objection, "as a claim entitled to share in the distribution of the assets of Stevenson, Titus & Co., a copartnership, until the partnership creditors have been paid in full, for the reason that the said claim is based upon a note which has been signed by * * * and does not purport to be a partnership undertaking."

The question in respect to each of the notes before the referee was: Was the indebtedness represented by such note an indebtedness of the partnership, or was it an indebtedness of the individuals or individual who signed it? The referee had before him as evidence upon this question the proofs of claim filed before him in the course of the bankruptcy proceedings, and the testimony taken at the examination of the bankrupts, which testimony, it was agreed by the attorneys for the parties interested, should be taken as the testimony to be considered in relation to the objections by the trustee.

Because the referee appears to have overlooked the fact that the averments in formal proofs by creditors in bankruptcy are entitled to some probative

force, it is well to consider what weight should have been given to them in the determination of the questions.

In Whitney v. Dresser, 200 U. S. 532, 535, 26 Sup. Ct. 316, 317 (50 L. Ed. 584), it is expressly ruled that bankruptcy proceedings are more summary than ordinary suits, and a sworn proof of claim against a bankrupt is prima facie evidence of its allegations, in case it is objected to. In the opinion the Supreme Court says:

"The words of the statute suggest, if they do not distinctly import, that the objector is to go forward, and thus that the formal proof is evidence even when put in issue. The words are: 'Objections to claims shall be heard and determined as soon,' etc. Section 57f. It is the objection, not the claim, which is pointed out for hearing and determination. This indicates that the claim is regarded as having a certain standing already established by the oath. Some force also may be allowed to the word 'proof' as used in the act. Convenience undoubtedly is on the side of this view. Bankruptcy proceedings are more summary than ordinary suits. Judges of practical experience have pointed out the expense, embarrassments, and delay which would be caused if a formal objection necessarily should put a creditor to the production of evidence or require a continuance. Justice is secured by the power to continue the consideration of a claim whenever it appears there is good reason for it. We believe that the understanding of the profession, the words of the act, and convenient and just administration all are on the side of treating a sworn proof of claim as some evidence when it is denied."

With respect to the testimony, it may be said that search thereof to find anything in direct conflict with the material averments in the proofs of claim is vain. The referee rightfully says in his opinion with respect to the testimony relating to all the notes: "This testimony shows that the money that was obtained on the notes was used (a) as a fund with which to purchase Hill's interest in the firm of Hill & Stevenson; or (b) to pay directly for improvements to the store or for stock for the store; on (c) as a fund from which the partnership paid debts." In explanation of the reference to the purchase of Hill's interest in the firm of Hill & Stevenson, it appears that, prior to the formation of the partnership now in bankruptcy, a partnership by the name of Hill & Stevenson carried on the business, and that upon the withdrawal of Hill a partnership was formed between Wm. Stevenson, John J. Stevenson, and Myers N. Titus, under the name of Stevenson, Titus & Co., each partner owning a one-third interest in the new firm, and that some of the money obtained on the notes was used by the new partnership to pay Mr. Hill, the retiring partner, for his interest.

The referee states that there is no proof that the parties to any of the notes knew at the time of the execution of the notes, and the payment of the money thereon, that the matter was a partnership undertaking, and that there is no proof of any later assumption of any of the debts by the partnership. We do not see that it is very material as to what the knowledge of the creditor may have been at the time of the creation of the liability. It is clear that every member of an ordinary partnership is its general agent for the transaction of its business in the ordinary way, and the firm is responsible for whatever is done by any of the partners when acting for the firm within the limits of the authority conferred by the nature of the business which it carries on. Lindley on Partnership, 124 (star paging).

Again, there is a principle of law that a person dealing with the agent can, when he discovers the undisclosed principal, hold him liable instead of the agent, and that, if a contract be entered into by one partner in his own name only, still, if in fact he was acting as the agent of the firm, his copartners will be in the position of undisclosed principals, and they may therefore be liable to be sued on the contract, although no allusion is made to them in it. Lindley on Partnership, 177, 178 (star paging).

It is true the conclusions expressed by Lord Lindley related to contracts not under seal; but the same rule applies even where a seal is used upon

the instrument, if the instrument itself does not require a seal. Gibson v. Warden, 14 Wall. 244, 247, 20 L. Ed. 797.

It is apparent that a seal is not necessary to give validity to any one of the notes in this case, because credits appear upon those against whom the statute of limitations would otherwise run.

The evidence discloses that it was a practice of the partnership to borrow money and give notes therefor by the signatures of the member as individuals. Indeed, the very number of notes presented in this case, not only by individual lenders, but by the bank, shows the practice.

The practice adopted by the firm, the fact that all the members of the firm were accustomed to sign notes, and the fact that all the money was used for partnership purposes, and not for the purposes of the individuals, seems to be conclusive upon the question of the authority of the individuals to act on behalf of the copartnership. Having acted thus upon the authority of the copartnership, and the partnership having received the benefits of their action, it should not be held that the partnership assets, which alone were so measurably increased, are not answerable to those whose money was so used.

In Davis v. Turner, 120 Fed. 605, 56 C. C. A. 669, there was a claim upon a note of which the following is a copy:

"$2,500.00.                                                January 1st, 1902.

"For value rec'd (money) we, or either of us, promise to pay John L. Hinton, two thousand and five hundred dollars, with interest, after date, said amount to be paid by the 1st of March, 1902. Witness our hands and seals.

"R. H. Raper.          [Seal.]
"Thomas C. Jones.      [Seal.]
"Florence E. Jones.    [Seal.]
"W. S. Cartwright.     [Seal.]
"John F. Engle.        [Seal.]

"Witness: W. T. Davis."

The debt expressed in that note was the subject of proof against the estate of the partnership. Objection was raised that it was the note of the individuals. The Court of Appeals of the Fourth Circuit reversed the court below, and in its opinion uses this language:

"The referee, however, in his report, which was confirmed by the court in bankruptcy, holds as a matter of law that, because the bond is signed by the members of the firm individually, under their separate signatures and seals, it is an individual debt and cannot be proven against the partnership assets of Jones, Raper & Co., until all the partnership debts have been paid in full. In this conclusion we think there is error, and that, although the paper bears the signatures and seals of the individuals composing the firm, yet, from the uncontradicted evidence, it appears affirmatively and fully that the debt was contracted by the firm, for its benefit, and that the whole proceeds of the note were used in the due course of the partnership business. The undisputed evidence in the case establishes the fact beyond controversy that the bond to Hinton was for a firm debt, and we so hold, and that, as such debt, it is provable against the estate of the partnership in bankruptcy."

That case was approved by the Court of Appeals of the Ninth Circuit in Mock v. Stoddard, 177 Fed. 611, 101 C. C. A. 237.

A word seems proper with respect to those notes which are signed by all the partners, including a deceased partner. No settlement was ever made with the representatives of the deceased partner. In fact, those interested in the estate of the deceased partner testified that they expected nothing out of the firm, and that the deceased partner had no estate, except a small sum by way of life insurance which went to the widow. It further appears that the partnership, after the death of Myers N. Titus, paid the interest upon the notes. It does not seem that under the testimony in this case the death of that partner should prevent the allowance of the claims, because the law is that the dissolution of a partnership does not dissolve its obligations.

From the foregoing it appears that the referee was in error in sustaining the objections filed by the trustee to the eleven claims referred to in his

opinion, and that the said claims should be allowed to participate in the distribution of the partnership assets.

Alexander J. Barron and McKee, Mitchell & Alter, all of Pittsburgh, Pa., for appellant.

F. W. Downey and Joseph Patton, both of Waynesburg, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In 1904 William Stevenson, John J. Stevenson, and Myers N. Titus formed a trading partnership under the name of Stevenson, Titus & Co. In 1907 Titus died and his interest in the firm was taken over by the remaining partners, who assumed the firm liabilities then existing and continued business under the same name. In September, 1914, the firm and the two individual partners were adjudged bankrupt, and thereafter a number of claims were presented to the trustee. Among them were eleven judgment notes owned by George N. Rinehart, A. G. Titus, Robert Minor, Maud Stevenson, P. J. Hoffart, and the Citizens' National Bank of Waynesburg, respectively. These notes are signed either by Myers Titus and the two Stevensons, or by the two Stevensons without Titus, or by J. J. Stevenson alone, and two of them are also signed by sureties. All the proofs of claim asserted the notes to be obligations of the firm, and on this subject some further testimony was taken. The notes were for borrowed money, all of which was applied to firm purposes with the knowledge and consent of the partners. No doubt there are merchandise creditors also, but we have no information concerning the time when their debts were contracted.

[1] The referee rejected all the claims on the ground that the face of the notes showed them to be individual obligations merely, and that this presumption had not been satisfactorily overthrown. Believing the evidence to be sufficient, however, the District Judge came to a different conclusion, and allowed the claims. In this court there is little dispute about the legal rules that should govern the controversy; the principal question is whether, on all the evidence, the presumption arising from the form of the notes has been overcome, and, as we agree with the District Judge in his view of the facts, we shall add nothing to his opinion as above set out, except to say that we think the evidence as a whole justifies the inferences (1) that the payees of the notes understood that the loans were made to the firm and for its benefit; and (2) that the notes were given with the intention of binding the firm, and in the belief that such a result was being accomplished.

[2] The bank rests its motion to quash on the fact that it owns two of the notes, one for more than $500, and one for less, and asks us to dismiss the appeal so far as the smaller claim is concerned on the ground that under section 25 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 553 [Comp. St. 1913, § 9609]) we have no jurisdiction to entertain it. The record shows that the notes were separately proved before the referee, in accordance with a practice that is said to prevail in the county of Greene, where the bankruptcy proceeding was

carried on. No reason appears for thus dividing such a claim in the hands of a single creditor, and we think the practice is objectionable. Clearly the debt due the bank was the aggregate of both notes, and the claim should have been so proved. The motion to quash is therefore refused.

[3] On the argument before us another objectionable matter was disclosed, to which we deire to call attention. The referee's order of rejection was general in its terms; but, as this was equivalent to a specific disallowance of each claim, it was properly so treated when the six claimants separately asked the District Court to review the order. And, although the order of the District Judge allowing the claims was also general in its scope, this again was equivalent to specific action upon each, and we find no difficulty in so treating it. But the action of the trustee in taking a single appeal from the comprehensive order of allowance violates a settled rule of appellate procedure, and would justify us in dismissing the appeal of our own motion. In the interest of regularity of practice, no other course would be open to us if we had felt obliged to disapprove the order in part, and to approve it in part. The six claims are wholly independent of each other; they are supported by different evidence, are owned by distinct parties, and present distinct subjects of litigation. As it happens, however, we have come to a similar decision on each claim, and we have therefore concluded to overlook the present error, but with the warning that our action now is not to be taken as a precedent.

The order allowing each of the claims in question is affirmed.