## REED v. DUNLAP.

### In re SCOTT & BLACKMER

(Circuit Court of Appeals, Eighth Circuit.    April 14, 1922.)

#### No. 5913.

1. **Bankruptcy ⚮⟹340—Proof of claim against bankrupt partnership some evidence that debt was a firm debt.**

Proof of claim filed against bankrupt partnership firm was some evidence that the debt for which claim filed was a debt of the firm, notwithstanding objection to the claim.

2. **Bankruptcy ⚮⟹340—Evidence held to show debt evidenced by notes signed by partners individually was partnership debt.**

In bankruptcy proceedings involving issue as to whether claim based on notes signed by the partners individually were the individual notes of the partners or the notes of the bankrupt firm, evidence *held* to overcome the presumption that the notes were the individual debt of the partners and to prove the debt a partnership obligation.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

In the matter of the bankruptcy of Scott & Blackmer, bankrupt. Claim by Ida A. Dunlap, opposed by L. S. Reed, as trustee in bankruptcy. Claim disallowed by referee, but allowed by the District Court on petition for review of referee's action, and the trustee appeals. Affirmed.

W. F. Wilson, of Oklahoma City, Okl. (Wilson, Tomerlin & Threlkeld and Howard & Beets, all of Oklahoma, Okl., Tolbert & Tolbert, of Hobart, Okl., and E. E. Brown and John N. Ott, both of Chicago Ill., on the brief), for appellant.

J. A. Duff, of Cordell, Okl. (Massingale & Duff, of Cordell, Okl., on the brief), for appellee.

Before CARLAND and STONE, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge.    [1, 2]. Appellee filed a claim against the estate of the firm of Scott & Blackmer, bankrupt, amounting to $11,473.    In her oath to said claim as amended, the consideration of the same was stated to be stock of the First National Bank of Hobart, Okl.    The claim was based on four promissory notes signed D. A. Scott and R. C. Blackmer.    The trustee objected to the allowance of the claim against the copartnership as it appeared on the face of the notes that they were signed by Scott & Blackmer individually.    The referee disallowed the claim, but the District Court on petition to review reversed his action and allowed the claim against the copartnership. The question before us is as to whether the presumption that the notes were the individual notes of the persons who signed them, arising from their individual signatures, was overcome by the evidence.    The proof of claim notwithstanding the objection to the same was some evidence

⚮⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the debt for which the claim was filed was a debt of the copartnership. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584; Frederick v. Citizens' National Bank, 231 Fed. 667, 145 C. C. A. 553.

The testimony of four witnesses was offered before the referee upon the question as to whether the claim of appellee was a copartnership obligation or not. These witnesses were R. C. Blackmer, a member of the copartnership, L. S. Reed, trustee, and E. F. Dunlap and E. A. Livermore, who testified by deposition. Blackmer testified that he was a member of the firm of Scott & Blackmer, Hobart, Okl.; that in March, 1913, said firm had a transaction with Ida A. Dunlap, through her agent and husband E. F. Dunlap, who was president of the First National Bank of Hobart; that the firm bought 165 shares of the stock of said bank which constituted all the Dunlap interest; that the stock was purchased by the partnership. All but $10,000 of the purchase price was in money which was paid by Scott & Blackmer out of partnership assets. The balance of the consideration was evidenced by the notes constituting the present claim. That it was the intention of Mr. Scott and himself to pledge the partnership to pay the notes. Scott & Blackmer paid the interest on the notes out of partnership funds. We sold some of the stock to different friends of ours at the same price that we bought and at the time we bought it. Blackmer on cross-examination testified that the stock certificates were issued to him individually and to Scott individually, as a matter of convenience to enable them to serve as officers. Dunlap testified:

That the claim in controversy was based upon purchase of bank stock; that the notes were given in partial payment for the purchase of bank stock; that the notes were given by Scott & Blackmer to Ida A. Dunlap; that the consideration for the notes was bank stock in the First National Bank of Hobart, Okl., bought by Scott & Blackmer, of the value of $24,825. $15,000 was paid in cash and the notes covered the balance. "The stock, before it was purchased by Scott & Blackmer, belonged to Ida A. Dunlap and myself. I dealt with Scott & Blackmer as a firm. The check for $15,000 cash was signed by Scott & Blackmer. The stock was sold to Scott & Blackmer as a partnership. Scott & Blackmer paid interest on the notes as a partnership. The interest was paid by check signed by Scott & Blackmer. Some payments were made on the notes by checks. which were signed by Scott & Blackmer. Scott & Blackmer stated, when buying the stock, that they wanted it as an aid to their farm loan business, and in their conversation relative to this negotiation they always used the word 'we.' I understood that the notes in controversy had to do with the partnership transaction of Scott & Blackmer. Scott & Blackmer told me that they were buying it as an aid to their farm loan business; that they were keeping a very small part of it themselves, but were selling it to their different connections—people to whom they sold their farm loan paper. I had no business with D. A. Scott and R. C. Blackmer as individuals."

Livermore, bookkeeper for Scott & Blackmer, testified to having issued firm checks in payment of the interest on the Ida A. Dunlap notes. The referee also found that the $15,000 payment and the various other interest payments were made by the firm and charged against the firm assets. The testimony of this witness in regard to the other book entries concerning which he was asked is confusing and difficult to understand.

Blackmer testified that Scott never looked at the books much; that he (Blackmer) was blind, and could not see the books if he had looked. Scott did not care what you did last week, but what you were going to do next week. Mr. Livermore took directions from both of us. The testimony of Reed, the trustee, simply shows a very confused and unreliable condition of the books of the copartnership, and from all the testimony we conclude that they are of no value in determining the question at issue. There would seem to be no necessity for discussing the propositions of law raised in the briefs of counsel, as there can be no dispute at the present time that the difference between firm debts and individual debts is a matter of substance, and the distinction must be kept clearly in mind in proving claims against a copartnership which is bankrupt.

The question in this case is one of fact, and we think the evidence preponderates in favor of the proposition that the amount due on the notes in question is a partnership obligation. The referee found differently, but when the real testimony which must be considered in determining the matter, is read, we agree with the District Court in its conclusion, and its order in the premises is therefore affirmed.