**In re RUDY et al.**
**No. 12396.**

District Court, W. D. Kentucky, Paducah.
Jan. 5, 1939.

Okey P. Keadle, of Huntington, W. Va., for petitioner.

Thomas S. Waller (of Waller & Threlkeld), of Paducah, Ky., for creditors.

Malcolm P. Wallace, of Paducah, Ky., referee.

SWINFORD, District Judge.

This cause is before the Court on a Petition for Review of an order of the Referee in Bankruptcy, disallowing the claim of Agee Department Stores in the sum of $24,700.

Prior to March 7, 1929, the department store of J. A. Rudy & Sons of Paducah, Kentucky, was owned in partnership by W. H. Rudy, Kate S. Rudy and Louise C. Rudy. The first two partners named owned a two fifths interest each and the last a one fifth interest. On March 7, 1929, Louise C. Rudy, by an agreement or contract of sale, transferred "all her right, title and interest in and to the partnership and firm assets of every kind and character, choses in action, personal property, real estate and mixed of J. A. Rudy & Sons," to W. H. Rudy and Kate S. Rudy. In consideration of this transfer W. H. Rudy and Kate S. Rudy executed and delivered to Louise C. Rudy certain promissory notes. The firm name "J. A. Rudy & Sons" does not appear on the notes.

With the withdrawal of Louise C. Rudy from the firm a new partnership was formed and continued under the same name. The partners and their respective interests in the new firm were W. H. Rudy, a three fifths interest, and Kate S. Rudy,

a two fifths interest. Payments were made on the notes by checks drawn on the firm account of J. A. Rudy & Sons. The entries on the books of the partnership show these withdrawals, but also show that they were charged as a debit against the personal account of W. H. Rudy. The second partnership was adjudged a bankrupt in October 1937.

Renewals of these notes were assigned to the present holder and claimant Agee Department Stores, Incorporated. It seeks to have its claim allowed as a creditor of the partnership and to share in the dividend equally with other partnership creditors.

It further appears that the holder of the notes, Agee Department Stores, Inc., is claiming a lien against the building in which the store was conducted. The facts as they pertain to this real estate are these:

On December 27, 1926, Mamie K. Wheeler and husband, Charles K. Wheeler, grantors, conveyed a parcel of real estate, (the property in controversy here), to a grantee designated and described in the deed as follows, to-wit: "Kate Rudy, Louise C. Rudy, the widow and sole devisee of Henry Rudy, deceased, and William H. Rudy, Partners, trading and doing business under the firm name and style of J. A. Rudy & Sons, parties of the second part".

On January 5, 1927, there was duly recorded a mortgage deed of trust to the Louisville Title Company, as trustee in which the mortgagor is described as follows, to-wit: "Kate Rudy, a widow, Louise C. Rudy, a widow, and W. H. Rudy, a single man, the said Kate Rudy, Louise C. Rudy and W. H. Rudy, being partners trading and doing business under the firm name of J. A. Rudy & Sons, and the mortgage deed of trust being executed by and for said partnership, and by and for said partners individually," signed as follows, to-wit:

```
"J. A. Rudy & Sons    W. H. Rudy
"By W. H. Rudy         Mrs. Kate Rudy
   "Mrs. Kate Rudy     Louise C. Rudy
   "Louise C. Rudy     Louisville Title Company,
                                        Trustee
                   "By Geo. W. Hutchinson,
                                     President"
```

In addition, each partner acknowledged by a separate certificate, all of which contained the following, to-wit: "who acknowledged the foregoing mortgage deed of trust to be his individual act and deed,

and as a partner of the firm trading and doing business under the firm name of J. A. Rudy & Sons, a party thereto".

The descriptions in the above mentioned deed and mortgage deed of trust are identical, and the latter refers to the former.

Title 11 U.S.C.A. § 23, subd. (f), provides: "The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

The real purpose of this section is that those assets which were contributed by creditors to the partnership should be used to pay those creditors who have thereby enhanced the value of the partnership estate. Therefore, it seems to me that the first question that should be asked is whether or not the debt claimed against the partnership was incurred by the partnership in exchange for something that increased the partnership assets. Necessarily each case must stand on its own merits and to determine this parol evidence is admissable. See the case of In re L. B. Weisenberg & Co., D.C., 131 F. 517, from the Eastern District of Kentucky, in which it is stated that the holder of the notes had a right to show by parol evidence that the joint notes held by it were firm debts.

The rule is well stated in the following language from the opinion in the case of Mock v. Stoddard, 9 Cir., 177 F. 611, 613. "The preliminary objection that parol evidence was inadmissible to show that these notes were given for and on behalf of the partnership, on the ground that such evidence tended to contradict and vary the terms of written contracts, is not tenable. The evidence was not introduced for that purpose. There is no controversy as to the terms of the written contracts. The question is: Whose contracts were they? Here are two individuals whose names are signed to these notes. They

were partners in business, and had been for many years. The holder of the notes introduced testimony tending to show that they were partnership notes, given for partnership obligations. This evidence was admissible under the well-known rule that evidence is always admissible to show that the signature to a written instrument, although that of an individual and prima facie for the purpose of acknowledging an individual liability, is in fact that of an agent for an undisclosed principal."

As authority for this position the court cites the case of Salmon Falls Manufacturing Co. v. Goddard, 14 How. 446, 454, 14 L.Ed. 493.

By the transaction between Louise C. Rudy and the remaining members of the firm nothing was added to the assets of the firm that could not have been subjected to the payment of firm debts before the notes in question came into existence. This transaction between the partners simply placed an additional burden upon the assets available to pay the partnership debts.

I recognize the fact that in certain instances benefits are derived by the partnership and the claims of former partners are allowed equally with other creditors, but as is pointed out in all the authorities the real criterion is wherein has the firm been benefited by the creation of the obligation. Again referring to Mock v. Stoddard, supra, this rule is expressed: "In the case of Strause v. Hooper (D.C.) 105 F. 590, it was held that notes signed by both members of a partnership for money borrowed and put into the firm as capital were not provable against the estate of the partnership in bankruptcy. The facts in this case show that the money borrowed was obtained by the individuals for the purpose of contributing each his share to the capital of the partnership. These debts were of the character of the claims of George Stoddard in the present case, based upon the notes of A. K. Stoddard given to George Stoddard for his share of the partnership. It was correctly held by the court below that this was an individual debt, and not provable against the partnership. But there is a distinction between debts incurred by individuals for the benefit of the individuals in contributing capital to a partnership and debts incurred by a partnership in the business of and for the benefit of the partnership."

The case of In re Strauss, 7 Cir., 9 F. 2d 792, apparently involved a very similar situation to that indicated by the record here.

In that case three brothers engaged in the tailoring business under a partnership arrangement. One of the brothers died and the other two purchased his interest in the business for which they executed notes signed individually.

The language used in the purchase agreement was very similar to that used in the agreement in the case at bar.

The books of the partnership at no time reflected the debt as a partnership obligation.

In a bankruptcy proceeding the court declined to impress the partnership assets with this liability, but pointed out that no check was drawn on the partnership account to meet payments on the obligation. Therein the case differs from the instant case. The opinion concludes with this paragraph [page 793]: "While we recognize that this issue is one of fact and perhaps, more specifically, one of intention (In re Van Rheeden & Sons, Bankrupt (C.C.A.) 295 F. 689, 297 F. 819), we are satisfied that the trial judge correctly held this contract created an individual liability, rather than a partnership liability. The decree is affirmed."

Counsel for the petitioner has given much time and thought to his case and has presented his theory with force and clarity. It is difficult to find authorities exactly in point, but I think there is a clear distinction between the case at bar and those cited in counsel's brief. In the case of Frederick v. Citizens' National Bank, 3 Cir., 231 F. 667, the obligation was made by a third party directly with the partnership and the consideration for the notes was passed directly to the account of the partnership. It is stated in the opinion that it is clear from the record that the payees of the notes understood that the loans were made to the firm and for its benefit and that they were given with the belief that such a result would be accomplished. It appears that these were new assets going into the firm, not a transfer of assets that were already subject to claims of partnership creditors.

A reading of the cases of Reed v. Dunlap, 8 Cir., 280 F. 380, and In re A. F. Van Rheeden & Sons, Mayer Bros. et al. v. Van Rheeden, 7 Cir., 295 F. 689, shows that each of these deals with an obliga-

tion that was created by the partnership in the usual course of business and credit was extended by the obligee to the partnership in the conduct of its ordinary affairs. The case of In re A. R. Van Rheeden & Sons, Mayer Brothers et al. v. Villa Grove State Bank, 7 Cir., 297 F. 819, was one in which the bank loaned money to the partnership and credited the partnership account with the amount of the loan by direction of the partners.

The very nature of the transaction in the case of In re Hess et al., D.C., 1 F.2d 342, distinguishes it from the instant case. In that case the members of the partnership regarded it as a partnership obligation and the Court in referring to this fact states that it was such "beyond question". The obligee required the partnership to issue financial statements and inventories monthly and to permit him to examine its books to see that a certain required amount of stock was kept on hand.

The facts in the cases of Quicksilver v. Haynes, 5 Cir., 56 F.2d 59, and In re Hurley Mercantile Company, 5 Cir., 56 F. 2d 1023, are so different from the case at bar that they are of little value as authority here. The opinion in the Quicksilver Case is devoted to a discussion of the Bulk Sales law of Texas, Vernon's Ann.Civ.St. art. 4001, and its application to the facts.

In the Hurley Case the note to the bank was signed with the partnership name only. In that case the court in its opinion said [page 1025]: "Whether a debt be a partnership or individual debt depends on who got the benefit of it if there is not an express contract. Schall v. Camors, 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247. If there is an express contract, those persons are liable who contract to be. Mitchell v. Hampel, 276 U.S. 299, 48 S.Ct. 308, 72 L.Ed. 582."

Each case must after all depend on its particular facts and I do not feel that the record here warrants an allowance of this claim against the partnership assets.

The referee denied the petitioner a lien upon the real estate.

For the purpose of paying the debts of a partnership and in order to facilitate the administration of its affairs in liquidation partnership realty is regarded in equity as personalty. This conversion is deemed to result from the devotion of the realty to the uses of the partnership. Carter v. Flexner, 92 Ky. 400, 17 S.W. 851, 13 Ky. Law Rep. 608; Divine et al. v. Mitchum, 4 B.Mon., Ky., 488, 41 Am.Dec. 241; Kentucky Block Cannel Coal Co. v. Sewell, 6 Cir., 249 F. 840, 1 A.L.R. 556.

The real estate in question is the building in which the business was carried on. It was conveyed originally to the Rudys as "partners trading and doing business under the firm name and style of J. A. Rudy & Sons". Later when a mortgage was given on the property it was executed in the same way. It was undoubtedly partnership property. There was clearly no intention on the part of either Louise C. Rudy or the two remaining partners to create a lien upon this property. Had they so intended they would have executed a mortgage and put it of record, thereby creating an actual lien. No equitable lien can be asserted against a creditor without notice. The instrument transferring all her interest retained no lien on its face and I am unable to see on what theory the petitioner can claim a lien.

The rule pertaining to partnership real estate must apply and the property treated as personalty and subjected to the payment of the debts of those who have qualified as partnership creditors.

I am of the opinion that the ruling by the referee on both of these questions was correct and should be affirmed.