Edward La Montagne, Jr., et al., Appellants, v. The Bank of New York National Banking Association, Respondent.

1. Partnership — Transfer of Partnership Assets to New Firm Is Subject to Payment of Debts. When one copartnership by a written instrument transfers all its assets to another intended to take its place and covenants that they are worth a sum stated over all liabilities and that in one year they will yield that amount in cash, nothing further being said about the debts, such transfer is necessarily subject to the payment of the debts of the old firm, for otherwise it would be fraudulent, as there would be nothing left to pay creditors. Under such circumstances there is no beneficial transfer of anything except what remains after the debts are paid, and the new firm is under obligation to pay the debts of the old, at least to the extent of what was fairly and in good faith realized from the assets.

2. Liability of Bank for Payment of Debt of Firm Where Business and Assets Were Taken Over by New Firm, Out of Deposit Made by Latter Firm — Estoppel. Where a check, representing the

amount contributed by a special partner to the capital of a limited partnership, which succeeded to the business and took over the assets of another firm, was, in the presence of all the members of the new firm, indorsed " for deposit " by a common member of both firms who signed the name of the new firm thereto and who with a member of the new firm deposited the check and the firm was duly credited with the amount thereof the day before the certificate of partnership was filed, the statement being made to the bank that although the articles were signed the certificate would not be filed until the next day and the firm would not commence business for several days — the receipt of the amount of an overdraft of the old firm upon the bank through a check drawn upon such deposit by one of the general partners of the new firm, and its application to the payment of the overdraft, does not constitute a misappropriation of the assets of the new firm; and the' latter cannot maintain an action against the bank to recover the amount thereof, although the new firm was not, in fact, authorized to do business on the day in question (the articles providing that business should not be begun until the next day), when it appears that the bank was not informed of such provision and the circumstances were insufficient even to put the bank upon inquiry as to such provision; since the new firm, having assumed to do business by making the deposit, is estopped from pleading its lack of authority as the basis for the maintenance of such an action.

*La Montagne* v. *Bank of N. Y. Nat. B. Assn.*, 94 App. Div. 219, modified.

(Argued October 26, 1905; decided November 21, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 30, 1904, upon an order reversing a judgment in favor of plaintiffs entered upon the report of a referee and directing a dismissal of the complaint.

Action by the general members of a limited copartnership to recover an alleged balance of deposits.

The undisputed facts, as stated in the dissenting opinion and approved in the prevailing opinion below, are as follows: " On and prior to June 22nd, 1892, three of the plaintiffs, Edward La Montagne, Jr., Herman Clarke and Wallace B. Smith, were carrying on business as brokers under the firm name of La Montagne, Clarke & Co. On the 22nd day of June, 1892, the three plaintiffs above named, together with Elisha M. Fulton, Sr., and Elisha M. Fulton, Jr., entered

into written articles of copartnership for the formation of a limited partnership under the laws of the state of New York to do a general brokerage business. The articles recited the facts that the members of the old firm, together with Fulton, Jr., were to be general partners, and Fulton, Sr., a special partner; that the limited partnership should begin upon the 23rd day of June, 1892, and, unless sooner dissolved, should continue for the term of ten years; that the special partner should contribute as his share of the capital of the limited partnership $200,000; that the partners La Montagne, Clarke & Smith should contribute to the capital of such limited partnership the sum of $100,000, which should be so contributed by transferring to said limited partnership all of the property, assets and good will of the former partnership of La Montagne, Clarke & Co., and in these articles the three members of the old firm covenanted that such property and assets, so transferred by them, were worth, and within one year would yield in cash, over all the liabilities of the old firm the sum of $100,000. On the same day all the partners of the new firm united in a certificate as required by the Laws of the State of New York to form a limited partnership, stating that the same would commence upon the 23rd day of June, 1892, and terminate upon the first day of July, 1902.

"Elisha M. Fulton, Jr., also made an affidavit upon the same day, which was filed with the certificate, that the sum of $200,000, specified in said certificate to have been contributed by Elisha M. Fulton, Sr., had actually been paid in cash. Upon the same day all the partners of the new firm met at the office of the old firm, which office was thereafter to be the office of the new firm, and Elisha M. Fulton, Sr., the special partner, delivered his certified check for $200,000, payable to the order of La Montagne, Clarke & Co., to Mr. Clarke, who indorsed it "for deposit" and signed the firm name thereto. Thereafter and about two o'clock in the afternoon of this day Clarke and Fulton, Jr., went to the banking house of the defendant, taking the certified check with them,

and they there had an interview with Mr. Mason, the cashier. The old firm had a running account at the bank and Mr. Clarke introduced Mr. Fulton, Jr., to the cashier as a new member of the firm, and said to Mr. Mason that the $200,000 check was the capital of the special partner, Mr. Fulton's father. An account was then and there opened with the new firm by depositing the check to its credit, and the cashier informed one of the bookkeepers that the new firm was to take the place of the old firm, and that the latter's account would be eventually closed out. The signature book was then brought in, and Mr. Fulton, Jr., signed therein the firm and his name also. Mr. Fulton, Jr., then said to Mr. Mason that they were making the deposit that day, although the firm did not expect to commence business until two or three days thereafter; that they had just signed the papers, but that the certificate could not be filed until the next day, as it was too late, and the firm really would not commence to do business until several days thereafter. Mr. Fulton, Jr., also told Mr. Mason that he was going in as a general partner, but that his father, whose check they had just deposited, was to be merely a special partner.

"At the close of the banking business upon the same day, June 22nd, 1892, the old firm had overdrawn its account $50,593.79, and a messenger from the bank was sent to the place of business of the old firm, who notified the firm to make good its account. Thereupon one of the general partners of the new firm, other than Fulton, Jr., drew a check upon the new firm for $60,000, which was sent to the bank with a deposit slip, made out by the general partner Smith, and a deposit made of it to the credit of the old firm, thereby giving the old firm a balance on hand in its account of $9,406.21.

"In August, 1893, the new firm made an assignment of all its assets to the plaintiff Fulton, Jr., in trust, to collect the same and pay the debts of the firm, and in such assignment they authorized him in such collection to use the name of the firm and to maintain and continue the bank account in the

name of the firm, and otherwise to absolutely control the same. The account was finally closed on October 16, 1893. The passbook had been balanced and vouchers returned therewith by the bank 15 different times between the times of opening and closing the account. The $60,000 check was not found by the plaintiff Fulton, Jr., with any of the returned vouchers, although it was shown to have been returned, and Fulton, Jr., did not learn of the giving of the $60,000 check until several years after he had closed the account. After June 22, 1892, the account of the old firm was carried for three days and was then closed, the balance being checked out."

This action was brought by the general partners to recover said sum of $60,000 and interest upon the ground that the defendant had no right, under the circumstances, to pay the check of the new firm for that amount on the 22nd of June, 1892. The referee held that the defendant was not entitled to credit for the sum so paid and ordered judgment for the plaintiffs for that amount and interest. The Appellate Division reversed and dismissed the complaint on the ground that such payment was not a misappropriation of the funds of the special partnership and having been lawfully made, did not render the defendant liable for the amount thereof. Two of the justices dissented in part, holding that the judgment should be modified by deducting therefrom the sum of $50,593.79 with interest thereon from December 13th, 1895, and affirmed as to the balance. The plaintiffs appealed to this court.

*Augustus C. Brown* for appellants. At the time when the partnership agreement of June 22, 1892, was made no debt from the old firm to the bank was shown to be in existence. (*Barlow* v. *Myers,* 64 N. Y. 41; *Embler* v. *H. S. B. Ins. Co.,* 158 N. Y. 431; *Pardee* v. *Treat,* 82 N. Y. 385; *Durnherr* v. *Rau,* 135 N. Y. 219; *Gilbert* v. *Phillips,* 13 N. Y. 114; *Leavitt* v. *Blatchford,* 17 N. Y. 521; *B. G. Ins. Co.* v. *Bank,* 162 N. Y. 163.) The plaintiff's firm did not assume

12

or agree to pay any of the old firm's debts. (Bates on Part. § 78 ; *White* v. *Eiseman*, 134 N. Y. 101 ; Pars. on Part. [4th ed.] 331 ; *Stanton* v. *Westover*, 101 N. Y. 265 ; *Menagh* v. *Whitwell*, 52 N. Y. 146 ; *Saunders* v. *Reilly*, 105 N. Y. 12 ; *Serviss* v. *McDonnell*, 107 N. Y. 260 ; *Hapgood* v. *Cornwell*, 48 Ill. 64 ; Story on Part. [7th ed.] § 396 ; *Kelly* v. *Scott*, 49 N. Y. 595 ; *Greenwood* v. *Broadhead*, 8 Barb. 593 ; *Crippen* v. *Hudson*, 13 N. Y. 161 ; *Field* v. *Chapman*, 15 Abb. Pr. 434.) The referee was correct in his decision upon the grounds upon which he specifically placed it, and the judgment entered on his report should have been affirmed by the Appellate Division. (2 R. S. ch. 4, tit. 1, § 1 ; *Van Ingen* v. *Whitman*, 62 N. Y. 513 ; *Durant* v. *Abendroth*, 69 N. Y. 148 ; *M. Nat. Bank* v. *Sirret*, 97 N. Y. 320 ; *White* v. *Eiseman*, 134 N. Y. 101.)

*William B. Hornblower* and *Hoffman Miller* for respondent. The contract made by plaintiffs with defendant on June twenty-second, when the account was opened, was not affected in any degree by the filing on June twenty-third of the certificate of limited partnership, or by Fulton's statement made on June twenty-second, to the effect that such certificate would not be filed until the next day. (*Marine Bank* v. *Fulton Bank*, 2 Wall. 252 ; *Phœnix Bank* v. *Risley*, 111 U. S. 127 ; *Shipman* v. *Bank*, 126 N. Y. 318 ; *Van Ingen* v. *Whitman*, 62 N. Y. 513 ; *Levy* v. *Lock*, 47 How. Pr. 394 ; *Durant* v. *Abendroth*, 9 J. & S. 61 ; *White* v. *Eiseman*, 134 N. Y. 101, 103 ; *Bank* v. *Mudgett*, 44 N. Y. 514 ; Lindley on Part. 176 ; *M. Nat. Bank* v. *Sirret*, 97 N. Y. 320.) A consideration of the articles of copartnership leads to the conclusion that the check was the authorized check of the firm. (*Hatch* v. *Bank*, 147 N. Y. 184 ; *Hutchinson* v. *Manhattan Co.*, 150 N. Y. 250 ; *Dike* v. *Drexel*, 11 App. Div. 77 ; 155 N. Y. 637 ; *Rochester* v. *Paviour*, 164 N. Y. 281 ; *Arnold* v. *Nichols*, 64 N. Y. 117 ; *Bank* v. *Widener*, 163 N. Y. 276 ; *Shaw* v. *McGregory*, 105 Mass. 96, 102 ; *Cross* v. *Nat. Bank*, 17 Kans. 336 ; Story on Part. §§ 152, 153 ; Pars.

on Part. § 435; *Frazer* v. *Howe*, 106 Ill. 563; Collyer on Part. § 530; *Bush Co.* v. *Gibbons*, 87 App. Div. 576; *Adams Co.* v. *Albert*, 155 N. Y. 356, 365; *Peyser* v. *Myers*, 135 N. Y. 599.) The defense of payment is good as against the plaintiff, who drew the check. Being complete as to him, it is at law good as to his copartners. (*Homer* v. *Wood*, 11 Cush. [Mass.] 62; *Tay* v. *Ladd*, 15 Gray [Mass.] 296; *Gordon* v. *Albert*, 168 Mass. 150; *Kilgore* v. *Bruce*, 166 Mass. 136; *Farley* v. *Lowell*, 103 Mass. 387; *Jones* v. *Yates*, 9 B. & C. 532; *Gordon* v. *Ellis*, 7 M. & G. 607; *Church* v. *Bank*, 87 Ill. 68; *Bank* v. *Ellars*, 48 Ill. App. 598; Collyer on Part. §§ 676, 1005; Story on Part. 377, § 238; *Bradley* v. *Aldrich*, 40 N. Y. 504.) The Appellate Division had power to dismiss the complaint. (*Southwick* v. *Southwick*, 49 N. Y. 510; *Lazarus* v. *R. R. Co.*, 145 N. Y. 581; *Matter of Davis*, 149 N. Y. 539; *Edmonston* v. *McLoud*, 16 N. Y. 543; *Brackett* v. *Griswold*, 128 N. Y. 644; *Edson* v. *Bartow*, 154 N. Y. 220; *Husted* v. *Thomson*, 158 N. Y. 328; *Hendrickson* v. *City of New York*, 160 N. Y. 144; *Snyder* v. *Seaman*, 157 N. Y. 449; *Lopez* v. *Campbell*, 163 N. Y. 340; *Mansfield* v. *Mayor*, etc., 165 N. Y. 208.)

Vann, J. When the new firm indorsed the certified check for $200,000 and deposited it with the defendant, a contract was thereby made between the parties thereto whereby the bank agreed to pay that sum or any part thereof to said firm upon demand. That contract was not modified by the statement, whether casually made or not, that although the copartnership papers had been signed, the certificate of limited copartnership could not be filed until the next day, and the firm would not commence business for two or three days. In view of the fact that the firm had already commenced to do business with the bank, the statement apparently was intended to apply only to the formal opening of its doors by the firm for the transaction of business with the public generally. However that may be, it is clear that the relation of debtor and creditor between the new firm and the bank commenced

with the deposit, and it would have continued, even if the certificate had never been filed and the firm had never begun to carry on business generally. The deposit was neither special nor unauthorized, for a common member of both firms in the presence of all the members of the new firm indorsed the check "for deposit" and signed the firm name thereto. A few minutes later the same person went to the bank with a member of the new firm who had not been a member of the old, deposited the check so indorsed and received a passbook in the usual form with the amount of the deposit duly credited thereon, both men having signed the signature book. No notice was given that the account could not be drawn upon at once or that the deposit was intended for a special purpose. The bank was not obliged to look beyond these facts, even if it was notified that the certificate of limited partnership had not been filed, and that there would be some delay in beginning business. It was its duty to pay the check for $60,000 when it was presented, and it would have broken its contract if it had refused. If the members of the new firm who made the deposit had before they left the bank drawn a check payable to bearer and had presented it for payment, we see no ground upon which the bank could lawfully have declined to pay it. Whether the parties had so complied with the provisions of the statute relating to limited partnerships as to protect the special partner, was of no concern to the bank. That was not its business, for it did not affect the validity of its contract. A limited partnership has the same power to make a contract of deposit as a general partnership and the case is the same in that respect as if the partnership had been general but by the terms of the formal agreement was not to commence until the day after the transaction in question. If the firm could indorse a check for deposit on June 22nd, as it did all its members being present, it could sign a check on that day and bind itself in the one case the same as in the other. The question does not arise, as in the cases relied upon by the appellants, whether creditors of the new firm could hold the special partner liable as a gen-

eral partner, but the simple inquiry is whether the new firm, whatever its character, after assuming to make a contract with the bank on June 22nd, 1892, could say years afterward when disaster had come, " We had no right to make that contract on that day, for the firm was not authorized to do business until the next day."

The articles had been signed before the deposit was made and the bank was so informed by two members of the new firm. It was not informed, however, of the provision therein that the firm should " begin on and include the 23rd of June," and the remark, after the deposit was made and the contract completed, " that the firm did not expect to start to do business for two or three days," fell so far short of notice of that provision as not even to put the bank upon inquiry. Power to do business at once was implied from the fact that the articles had been signed, and was not affected by the expectation of the firm with reference to opening its doors. The bank had the right to assume that if the papers were signed the firm could do business at once, even if it did not expect to formally begin its general business for a few days. The deposit is all there is of this case, for an authorized deposit is an authorized contract and the defendant simply performed the contract. A bank need not look into copartnership articles to learn the actual authority of the various members, for it has the right to rely on their apparent authority and to act on the presumption that each is the duly authorized agent of the firm.

When one copartnership by a written instrument transfers all its assets to another intended to take its place and covenants that they are worth a sum stated over all liabilities and that in one year they will yield that amount in cash, nothing further being said about the debts, such transfer is necessarily subject to the payment of the debts of the old firm, for otherwise it would be fraudulent, as there would be nothing left to pay creditors. Under such circumstances there is no beneficial transfer of anything except what remains after the debts are paid and the new firm is under obligation to pay the debts of

the old, at least to the extent of what was fairly and in good faith realized from the assets. There was no misappropriation, therefore, of the assets of the new firm by paying the amount of the overdraft which was a debt of the old.

Upon the facts found by the learned referee, we think his conclusion of law that the defendant is liable for the sum of $60,000 and interest was erroneous and required a reversal by the Appellate Division. As to the balance of the deposit remaining in the bank after payment of the check for $50,593.79, we express no opinion, as the facts may not have been fully developed in that regard.

We announce these conclusions to guide the course of the new trial, which we deem it our duty to order, without attempting to add to the arguments of the learned Appellate Division. The facts depend mainly upon oral evidence and we are not satisfied that all the evidence in existence has been produced with reference more particularly to the balance of $9,406.21 remaining after payment of the check for the overdraft. The disposition of that sum does not appear so clearly as to make it certain that the facts cannot be changed by further investigation. (*Ross* v. *Caywood*, 162 N. Y. 259.)

The judgment of the Appellate Division should be so modified as to order a new trial, and, as modified, affirmed, with costs in all courts to abide event.

Cullen, Ch. J., Gray, Bartlett, Haight and Werner, JJ., concur; O'Brien, J., absent.

Judgment accordingly.