STRINGER v. STEVENSON. In re LEWIS (two cases). In re H. J. LEWIS OYSTER CO.

(Circuit Court of Appeals, Second Circuit. February 14, 1917.)

Nos. 162–164.

1. BANKRUPTCY ⬩340—PAYMENT OF CLAIMS—EVIDENCE—INDIVIDUAL DEBT.
    In bankruptcy proceedings against a partnership and the surviving partner, evidence *held* to show that loans by the claimant were made to the partner individually, not to the firm, so that the claim could not be allowed against the firm assets.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527.]

2. PARTNERSHIP ⬩239(1)—DISSOLUTION—ASSUMPTION OF FIRM DEBTS.
    Where, on the retirement of one of three partners from the firm, the assets were transferred to one of the remaining partners, who assumed the firm debts, and thereafter the two remaining partners formed a new firm, all the capital of which was contributed by the partner to whom

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the assets had been transferred, the debts of the former firm did not become debts of the new firm, but remained individual debts of the partner who assumed them.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 495.]

3. PARTNERSHIP ☞125—REPRESENTATION BY PARTNER—ACTING FOR FIRM.

In order that a firm may be bound by the acts of a partner, the partner must have performed the acts in his character as agent for the firm, and not as principal, and whether he made an agreement as agent or as principal is a question of fact, dependent on the intent and agreement of the parties.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 190.]

4. PARTNERSHIP ☞155—REPRESENTATION BY PARTNER—INDIVIDUAL ACT—BENEFIT TO FIRM.

When a partner does an act on his own behalf, the firm does not, as a general rule, become bound thereby merely because it obtained the benefit of the act.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 278-280.]

5. PARTNERSHIP ☞181—LOANS TO PARTNER—PAYMENT OF FIRM DEBTS—RIGHTS OF LENDER.

To the extent that loans made to an individual partner were applied to the payment of firm debts, the lender had a right in equity against the firm assets; but that right came to an end when those assets ceased to be partnership assets.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 310, 316, 317.]

6. PARTNERSHIP ☞237—FORMATION OF NEW FIRM—DEBTS OF OLD FIRM.

When, upon the retirement of one partner, the others form a new firm, the new firm is not liable for the old firm's debts, unless it assumes them.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 489, 490, 493, 494.]

7. PARTNERSHIP ☞77—DISPOSITION OF FIRM PROPERTY—RIGHTS OF PARTNER.

Partners may by agreement make any disposition of firm assets that an individual can make of his property; their right of disposition, like an individual's, being subject to the prohibition against transfers to defraud creditors.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 125, 145.]

8. BANKRUPTCY ☞351—PRIORITY OF FIRM CREDITORS—PARTNERSHIP LIEN.

The priority of firm creditors depends on the existence of the partner's lien, and if the partners consent that the firm assets shall become the individual property of one partner the priority of firm creditors is gone.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564.]

9. PARTNERSHIP ☞242(5)—RETIREMENT OF PARTNER—FIRM ASSETS—ASSUMPTION OF DEBTS—EVIDENCE.

Where the evidence showed that, on the retirement of one of three partners, the firm debts were assumed by one of the remaining partners, not by the new firm, the fact that one of those debts was carried on the books of the new firm, but in red ink, to indicate that it was one of the debts of the old firm, does not, when considered with the evidence, show an assumption of that debt by the new firm, but is merely an entry on the books for the convenience of the partner who had assumed to pay the debts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 506.]

10. PARTNERSHIP ☞242(5)—RETIREMENT OF PARTNER—ASSUMPTION OF FIRM DEBTS—EVIDENCE—TRANSFER OF BANK ACCOUNT.

The fact that the bank account of an old firm was transferred to the new firm, composed of the remaining partners, after the retirement of a

partner, is not controlling that the new firm assumed the debts of the old, where the testimony showed that one of the partners assumed such debts and agreed to furnish all the capital for the new firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 506.]

Hough, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Southern District of New York.

In the matter of G. Franklin Stringer, individually and as sole surviving partner of Stringer & Co., bankrupt. From decrees allowing the claims of the H. J. Lewis Oyster Company and of H. Leroy Lewis as claims against the firm assets, the trustee, J. Gardner Stevenson, appeals; and from a decree allowing the claim of Mary E. Lewis in part only as a claim against the firm assets, both the claimant and the trustee appeal. Decrees (234 Fed. 454) modified, and claims allowed only against individual assets.

See, also, 230 Fed. 177; 233 Fed. 799.

A. Gordon Murray, of New York City, for trustee.

Henry M. Stevenson, of New York City, for claimants.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The trustee of the bankrupt's estate has brought here appeals from three separate decrees allowing certain claims against that estate. These claims are:

(1) A claim of Mrs. Mary E. Lewis. Proof of debt was filed in the office of the referee in bankruptcy on November 22, 1915, in the sum of $64,314.71. This was reduced by stipulation to the sum of $62,-033.04. The referee allowed the claim in that amount against the estate of the bankrupt, as sole surviving partner of Stringer & Co., and the said firm of Stringer & Co. The trustee thereupon objected on various grounds, and among others on the ground that the referee erred in holding that the amount constituted a provable claim against the firm assets. When the matter came up in the District Court, the allowance was reversed as to a part. The District Judge allowed $15,000 of this claim as against the firm assets, and the balance, $47,033.05, as a claim only against the individual estate of the bankrupt; and a decree modifying the order of the referee as above indicated has been entered. From that decree both the claimant and the trustee have appealed.

(2) A claim of the H. J. Lewis Oyster Company. Proof of debt was filed in the office of the referee on January 26, 1915, in the sum of $25,000; and on November 22, 1915, an amended proof of claim was filed in the sum of $25,091.69. This claim was allowed against the firm assets of Stringer & Co. by the referee, and that finding has been sustained by the District Judge, who has entered a decree to that effect. The trustee has appealed from that decree.

(3) A claim of H. Leroy Lewis. Proof of debt was filed in the office of the referee on April 26, 1915, in the sum of $6,771.96. Thereafter an amended proof of debt was filed, which fixed the amount of the indebtedness in the sum of $6,706.65. The referee allowed this as a claim against the firm assets of Stringer & Co. and entered a decree to that effect. The trustee has appealed from that decree.

The appeals from these three decrees were argued and submitted at the same time. They will be disposed of in one opinion. In considering these various claims it will be necessary to keep distinctly in mind the partnership relations of the bankrupt:

First in time is the firm of Jewell, Stringer & Co. That firm was composed of Edward H. Jewell, G. Franklin Stringer, and W. C. Tegethoff. This firm continued in existence until February, 1911, when Tegethoff withdrew. Second. Then at once followed the firm of Jewell & Stringer, composed of Edward H. Jewell and G. Franklin Stringer. In October, 1911, G. Franklin Stringer, Jr., was admitted to the firm; the firm name remaining as before. Third. On May 23, 1912, Jewell retired from the firm of Jewell & Stringer, and the firm of Stringer & Co. was formed, composed of the two Stringers, father and son. It continued in existence until January, 1915, when G. Franklin Stringer, Jr., died. The partnership was based on an oral agreement, there being no written partnership articles. Stringer, Sr., was to furnish all the money; the son contributing merely his services, and sharing in the profits or losses to the extent of 25 per cent.

As we understand it, these various firms of Jewell, Stringer & Co., Jewell & Stringer, and Stringer & Co., were engaged in a stockbrokerage business in the city of New York. The testimony shows that on the retirement of Jewell there was transferred to Stringer, Sr., all the partnership assets and he assumed all the partnership liabilities. Mr. Jewell's testimony is that upon his withdrawal all the assets and obligations of the firm of Jewell & Stringer were assumed by Stringer, meaning Stringer, Sr., the bankrupt; and that that was the reason why he (Jewell) transferred to him the seat on the Stock Exchange. The seat stood on the books at $80,000, and it was transferred at $72,000. This was a paper loss of $8,000, half of which was charged to Jewell and half to Stringer.

There is no testimony in the record which contradicts the testimony that, on the dissolution of the firm of Jewell & Stringer, the assets and obligations of the firm were assumed by Stringer, Sr. There are no allegations in any of the proof of claims that this transfer of the assets to Stringer, Sr., was not made in entire good faith. There is no intimation anywhere in the testimony that it was made to hinder, delay, or defraud creditors.

There is no allegation and no proof that at the time this transfer was made the firm of Jewell & Stringer was insolvent or likely to become such; and there is no allegation and no proof that at that time either partner was individually insolvent. At the time Jewell withdrew, he gave to Stringer a demand note for $46,735.93. It appears that in April, 1915, when Jewell gave his testimony in this case, three years after the dissolution of the firm, that the note had not been paid, and that he was at the time of giving his testimony unable to pay it. But this does not prove insolvency in May, 1912, and the District Judge in his opinion declares that "the firm of Jewell & Stringer was not insolvent."

[1] We come now to examine the facts relating to the claim of Mrs. Lewis. This lady is the sister of G. Franklin Stringer, the bankrupt.

At various times she has been in the habit of advancing him large sums of money; he at the time of the failure being indebted to her in the sum of $300,000. The particular claim herein involved, in the sum of $62,033.04, is based upon cash loaned to the bankrupt at divers times and upon bonds and stocks which she at different times let him have and which he sold.

The claimant testified that in giving her brother these properties she took back no writing, but that all the transactions were verbal, and that there was never any particular agreement between her brother and herself respecting the matter. "It was simply understood," she testified, "that he would repay the money." Asked as to the securities she let him have, and as to whether there was any understanding or agreement as to them, she said:

"The idea of it was that I loaned him until he could make some return; we didn't discuss any time he should have them, or anything about it."

Then, she was asked:

"Did he state to you at that time what he was going to do with these securities?"

And she answered:

"No; I didn't question him anything about what he was going to do with them. Q. But after you handed them or gave them to him, using your own phrase, he could do with them as he wished? A. It was for his judgment as to how he used them; I never discussed that at all."

Stringer's understanding of these transactions is shown by the fact that this claim now made against the firm assets for $62,033.04 was included by him in his personal schedule of liabilities. At the hearing before the referee he was asked to state how it was that that amount which had been made as a claim against the firm was included in the $300,000 personal liability to Mrs. Lewis. His answer was:

"Simply because it was always my understanding that any moneys that she loaned to me were loaned to me personally and became my personal liability. * * * I have always considered it so in all the transactions we have had, and that is the reason I put it in my personal schedules."

He was asked whether this understanding was the result of any conversation he had with Mrs. Lewis, and he answered in the negative. He said he had never had any conversations with her, regarding any loans she had ever made, as to whether or not the loans were to him personally or to his firm.

"We had no particular conversation about it. I needed the money, and she let me have it, the same as she had let me have the sums of money before I went into the brokerage business."

It also appears that no firm obligations of Jewell & Stringer, or of Stringer & Co., were ever given to Mrs. Lewis, and that he never promised on behalf of the firms that they would be liable to Mrs. Lewis for any of the money; and he testifies that it was his intention, not that the firms should pay her, but that he would personally pay her, as to all the transactions he had with her. It farther appears that the books of Stringer & Co. show no entries of firm indebtedness to Mary E.

Lewis in the sum of $64,000. The books show no loans by Mary E. Lewis to Jewell & Stringer.

We are compelled to conclude that these loans were made to G. Franklin Stringer, Sr., individually, and not to the firm. It appears that certain bonds and a check for $5,000 payable to Jewell & Stringer were delivered in November, 1911, to G. Franklin Stringer, Jr. But Mrs. Lewis testified, as to that, that that accommodation was advanced under the same general understanding as the others had been and that "it was for the same use as the rest was." That this was the understanding of all parties is shown by the fact that these bonds were charged on the books to G. Franklin Stringer's special account, and Stringer, Sr., testified that he considered all transactions entered in that account as his personal transactions.

The referee concluded that the advances made by Mrs. Lewis became liabilities of the firm in existence at the times when they were made respectively; that some of the advances were made while the firm of Jewell & Stringer was in existence, and became a claim to that extent against that firm; that other advances, having been made during the existence of the firm of Stringer & Co., became the liabilities of that firm; and that, as the obligations of Jewell & Stringer were assumed by Stringer & Co., all the claims became claims against the latter. This conclusion seems to have been reached as follows:

"Where one copartnership transfers all its assets to another, intended to take its place, nothing being said about debts, such transfer is necessarily subject to the payment of the debts of the old firm."

But in our opinion these loans were not loans to Jewell & Stringer or to Stringer & Co.; and if any of them had been loans to Jewell & Stringer, they were never assumed by Stringer & Co., but by Stringer, Sr., and the assets of Jewell & Stringer were not transferred to Stringer & Co., but to Stringer, Sr. The disallowance by the District Judge of $47,033.05 in the claim of Mrs. Lewis against the assets of the firm of Stringer & Co. was correct.

[2] It remains to consider whether his allowance of $15,000 of the claim against the firm assets was also correct. In this amount the District Judge seems to have included a check given on November 10, 1911, for $5,000. That check was made payable to the order of Jewell & Stringer, and given to Franklin Stringer, Jr., during the absence of his father. We have above referred to the testimony of Mrs. Lewis concerning that transaction, and that it was made upon the same basis as all the rest of the loans. But if her testimony in that particular is to be disregarded, and the loan is to be held as a loan to Jewell & Stringer, it is still not a claim against the firm of Stringer & Co., which never assumed the liabilities of Jewell & Stringer.

Then the District Judge in his $15,000 allowance seems to have counted in certain International Silver Company bonds, which were delivered to Franklin Stringer, Jr., at the time he obtained the $5,000 check. The District Judge seems to have thought that these bonds found their way into the possession of Stringer & Co. The proof of debt is that they were disposed of by Jewell & Stringer, and in the assignment of errors by the claimant they are described as having been disposed of on

240 F.—57

May 8, 1912, which was prior to the formation of the firm of Stringer & Co. We know of nothing in the record to the contrary; and if these bonds are assumed to have been loaned to Jewell & Stringer, and not to Franklin Stringer, Sr., through the agency of his son, the loan would create a liability which was assumed by Stringer individually on the dissolution of the firm, and so constitutes no claim against the firm as- sets of Stringer & Co.; and the entire claim of Mary E. Lewis for $62,- 033.04 against the firm assets of Stringer & Co. should have been dis- allowed, and not merely the $47,033.05 as directed by the District Judge.

The District Judge, in stating his reason for allowing proof to be made for this $15,000 against the firm assets, says:

"The firm of Jewell & Stringer was liable, therefore, to Mrs. Lewis, and upon the transfer of this obligation with the assets of the firm of Jewell & Stringer to G. Franklin Stringer as surviving partner, and with the immediate transfer by him of these assets to the firm of Stringer & Co., this item be- came a debt against the firm of Stringer & Co., and the allowance of the claim by the referee is correct."

In this respect the District Judge fell into error. The law applicable to the claim made by Mrs. Lewis is not doubtful.

[3] 1. In order that a firm may be bound by the acts of a partner acting within his authority, the person whose acts it is sought to impute to the firm must have acted in his character of agent for the firm, and not as principal. If he acted as principal, he alone is liable. National Bank v. Cringan, 91 Va. 347, 21 S. E. 820; Bannister v. Miller, 54 N. J. Eq. 121, 32 Atl. 1066; Ferson v. Monroe, 21 N. H. 462; Holmes v. Burton, 9 Vt. 252, 31 Am. Dec. 621. And whether he entered into the agreement as agent or as principal is a question of fact, dependent upon the intent, understanding, and agreement of the parties. The in- tent, understanding, and agreement of both Mrs. Lewis and Stringer is shown by the evidence to be that her loans were to him and not to his firm. This is entirely clear as to all the loans, except those made to Stringer, Jr., on November 10, 1911; and if it be assumed that those particular transactions were with the firm of Jewell & Stringer, they subsequently became the individual indebtedness of Stringer by his as- sumption of the liabilities of that firm on its dissolution.

[4] 2. When a partner does an act on his own behalf, the general rule is that the firm will not be bound merely by reason of having ob- tained the benefit of that act. So that if a partner, without authority from the firm, borrows money, the lender cannot recover from the firm, although the money may have been applied for its benefit. Smith v. Craven, 1 Cromp. & J. 500; Hawtayne v. Bourne, 7 M. & W. 595; National Bank v. Thomas, 47 N. Y. 15. But if money so borrowed has been expended in paying the legitimate debts of the firm, the lender is entitled in equity to the repayment out of the firm assets of money shown to have been so applied. 22 Am. & Eng. Encyc. of Law, p. 164; Blackburn Building Society v. Cunliffe, 22 Ch. Div. 61.

[5] To the extent that the loans made by Mrs. Lewis to Stringer could be shown to have been applied to the payment of the debts of Jewell & Stringer, she had a right in equity to come upon the assets of

Jewell & Stringer. But she never asserted that right; and when the property ceased to be partnership property her right to be subrogated as against it to the rights of the partnership creditors whose debts had been paid by her money came to an end.

[6] 3. When, upon the retirement of one partner, the others constitute a new firm, such firm is not liable for the old firm's debts, unless it assumes them. 30 Cyc. 614; Weil v. Jaeger, 174 Ill. 133, 51 N. E. 196. In the instant case the express agreement was that the firm debts of Jewell & Stringer were assumed by Stringer, Sr. So that the liabilities of Jewell & Stringer never became the liabilities of Stringer & Co.

[7] 4. Partners may by agreement make any disposition of the firm assets that an individual can make of his property. Allen v. Center Valley Co., 21 Conn. 130, 54 Am. Dec. 333; Guild v. Leonard, 18 Pick. (Mass.) 511; Fitzgerald v. Christl, 20 N. J. Eq. 90; Haskin v. James, 96 Cal. 258, 31 Pac. 36. This is, of course, subject to the principle that the transfer is not made to defraud creditors. Huiskamp v. Moline Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971. Whether this principle is also subject to the condition that the firm must have been solvent at the time is a question upon which the courts have differed. We do not need to consider that phase of the subject, for it is not claimed that the firm of Jewell & Stringer was insolvent when its assets were transferred to Stringer. By the agreement between Jewell & Stringer, upon the dissolution of that firm, the firm assets became the individual property of Stringer, Sr. Where the assets are transferred to one partner in consideration of his promise to pay the liabilities, the validity of the transaction turns upon the law of fraudulent conveyances. If no intent to hinder, delay, or defraud creditors appears, the firm creditors cannot impeach the transaction.

[8] 5. The priority of firm creditors depends upon the existence of the partner's lien, and if a partner consents that the firm assets shall become the individual property of one of the partners, the priority of the firm creditors is gone. Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370. As stated in Fitzpatrick v. Flannagan, 106 U. S. 648, 654, 1 Sup. Ct. 369, 27 L. Ed. 211, the right of a partnership creditor to subject the partnership property to the payment of his debt in equity in preference to creditors of an individual partner is derived through the other partner, and it subsists only so long as that of the partner through which it is derived remains. And in Lindley on Partnership, volume 2 (2d Am. Ed.) p. 698, it is said that:

"The creditors of the firm have no lien on its property which can prevent the partners from bona fide changing its character and converting it into the separate estate of one of them."

The transfer of the firm assets of Jewell & Stringer to Stringer, therefore, deprived the creditors of Jewell & Stringer of their priority. So that, if Mrs. Lewis were to be regarded as a creditor of Jewell & Stringer, rather than of Stringer individually, she lost her priority by that transfer.

The case of La Montagne v. Bank of New York National Banking Association, 183 N. Y. 173, 76 N. E. 33, is relied upon by counsel for

Mrs. Lewis. That case, however, is not applicable to the facts which this record presents. That case relates to a written transfer by one firm to another of all its assets, without any agreement as to the payment of the firm debts; and it was held that the firm taking the assets would take them subject to the payment of the firm debts, as otherwise the transfer would be fraudulent, as there would be nothing left to pay creditors. In the case at bar there was an agreement that Stringer was to pay the debts, and there was no transfer of the assets of the old firm to the new.

The case of Frederick v. Citizens' National Bank, 231 Fed. 667, 145 C. C. A. 553, decided in the Circuit Court of Appeals for the Third Circuit, simply holds that where money is borrowed by individual members of a firm, but is in fact borrowed and used for the benefit of the firm, and it is the understanding of both borrower and lender that the notes given for the money are firm obligations such notes may be proved against the estate of the partnership. We have no disposition to question that principle. The case is simply not applicable, for it is not shown that borrower and lender, or even either of them, understood at the time that the transactions here involved were intended to create firm obligations.

[9] We now come to the claim of the H. J. Lewis Oyster Company for the sum of $25,000. The facts as to this claim are as follows: On March 22, 1910, the Oyster Company loaned the sum of $25,000 to Jewell, Stringer & Co. Several renewal notes were given successively for this indebtedness; the last one being dated on March 21, 1911, by Jewell & Stringer. That this was a liability of the firm of Jewell & Stringer at the time Jewell withdrew is evident. Was this liability assumed by Stringer & Co.? The books of Stringer & Co. show an entry in red ink of an indebtedness of $25,000 to the H. J. Lewis Oyster Company. The entry is made under "Bills Payable." The testimony is that an entry in red ink shows an outstanding liability carried over from Jewell & Stringer. The books fail to show any corresponding entry of a consideration to Stringer & Co. therefor. They do show that every three months a check was sent to the Oyster Company and credited to "Special Interest Account."

The question, therefore, is whether the testimony given by Jewell that Stringer, Sr., assumed the debts of Jewell & Stringer, shall be disregarded, or whether this entry shall be accepted in the light of that testimony and treated accordingly. We think the latter course should be adopted respecting it. The fact that firm checks were used to pay the interest is not important, for it is matter of common knowledge that firm checks are every day used to pay individual liabilities. It is more important that the entry shows this indebtedness among "bills payable." But the testimony shows that red ink was used to indicate that it was not a debt incurred by the firm of Stringer & Co., but one incurred by Jewell & Stringer. That it had a status of its own, different from the regular debts of the firm, is indicated by that fact. In the absence of evidence that Stringer, Sr., had assumed all the liabilities of the old firm and furnished all the capital of the new, the presence of such an entry on the books would be of the greatest importance. But

in the light of that evidence, and we think the entry is to be read in the light of that evidence, it means nothing more than that, for convenience of the senior partner, who had agreed to pay them, there were entered on the books of the new firm the liabilities of the old.

[10] The fact that the bank account of the old firm of Jewell & Stringer was transferred to Stringer & Co. without any withdrawal of the funds is not a controlling circumstance. It is consistent with the fact that the two members of the firm of Jewell & Stringer had agreed that Stringer should take the assets, having agreed to pay the debts, and that the transfer from the one bank account to the other should be made, as Stringer had agreed to furnish all the capital of the new firm of Stringer & Co. Unless we are prepared to hold that Jewell testified to a falsehood when he said that it was agreed that Stringer took the assets and assumed the liabilities, we must hold that the claim of the H. J. Lewis Oyster Company was a claim against Stringer, Sr., individually, and not against the firm of Stringer & Co. The evidence is not convincing that the new firm assumed that liability; and there is no evidence whatever that the proceeds of these bonds were ever used to pay debts of Stringer & Co. We therefore hold that the claim of the H. J. Lewis Oyster Company is not a claim against the assets of Stringer & Co.

We come now to the claim of H. Leroy Lewis. It appears that the claim is for $6,706.65 against the firm assets of Stringer & Co. The referee reported that he was of the opinion "that the loan was made under the same circumstances and understanding as those of Mary E. Lewis." In his opinion it was an indebtedness of Jewell & Stringer, and became an indebtedness of Stringer & Co., and should be allowed as against the assets of that firm. In this conclusion the District Judge concurred.

The facts are that the claimant H. Leroy Lewis is the son of Mary E. Lewis. The mother had agreed to loan 15 bonds of the International Silver Company and of the par value of $1,000 each. Her securities were contained in a safe deposit box, and she telephoned her son to go to the Safe Deposit Company and get the 15 bonds from her box and deliver them to her nephew, Stringer, Jr. Lewis had a key to her box, and on opening it found there were only 9 of the bonds; but, as he had some of the same bonds in his own deposit box, he took from it 6 similar bonds and delivered the 15 to Stringer, Jr., at the Belmont Hotel in New York. The 6 bonds obtained from his box belonged to Lewis himself, and not to his mother. There is no evidence that, when Lewis delivered the 15 bonds, he informed Stringer that 6 were his own. Under the circumstances it might be a fair inference to hold that Lewis delivered all the bonds to Stringer as the bonds which his mother had promised and was loaning. That that was the mother's understanding of the transaction is shown by her testimony, and that that was Stringer's is shown by the fact that these 15 bonds were included in the memorandum of securities which he sent her as having been loaned by her and charged in the G. Franklin Stringer Special Account. Mrs. Lewis testified that she loaned all the securities included in that memorandum. And Lewis admits that at the time he delivered the bonds he did not

inform Stringer that 6 of them belonged to him personally and were loaned by him and not by his mother. The firm books show that the firm of Jewell & Stringer had no account with H. Leroy Lewis. They also show that Jewell & Stringer received the bonds from G. Franklin Stringer in his special account. And the books of Stringer & Co. show no indebtedness to H. Leroy Lewis. In this respect this claim differs from that made by the H. J. Lewis Oyster Company. The books of Stringer & Co. show that certain payments were made by firm checks to H. L. Lewis and that such payments were charged to G. Franklin Stringer Special Account.

This loan was made on November 10, 1911. The allegation of the claim is that it was made to the firm of Jewell & Stringer. The evidence is very unsatisfactory. There appears to have been no receipt given by the firm or by any one. A memorandum was sent to Mrs. Lewis, in which the bonds and stocks received at other times from Mrs. Lewis are entered; but they are all entered under the head of "G. F. Stringer Special Account," which seems to indicate that they were regarded as loans to Stringer, rather than to Jewell & Stringer. And this appears to be the only written evidence as to the loan. Mrs. Lewis testified that she just agreed to hand over the bonds when Stringer, Jr., told her the money was needed and, that there was no agreement whatever about them.

For the purposes of the case it may be assumed that the loan of these 6 bonds was made by Lewis for himself, and not as the agent of his mother and on her account. It may also be assumed that the loan was made to the firm of Jewell & Stringer, and not to Stringer, Jr., as agent for Stringer, Sr., individually—notwithstanding the testimony of the mother that the transaction was on the same basis as the other transactions with Stringer, Sr. If those facts be assumed, we have a liability in favor of Lewis against the firm of Jewell & Stringer. That liability became the personal liability of Stringer, Sr., on the dissolution of the firm of Jewell & Stringer. Under the authorities before cited it never became a liability of Stringer & Co., for it never was assumed by them, neither were the proceeds of that loan ever used to pay any of the liabilities of that firm. We therefore hold that the claim of H. Leroy Lewis cannot be allowed as against the assets of the firm of Stringer & Co.

The decree disallowing the claim of Mary E. Lewis in the sum of $47,033.04, and allowing it in the sum of $15,000, is modified, and the entire claim is disallowed as against the firm assets of Stringer & Co., and is allowed as a claim only against the individual estate of G. Franklin Stringer.

The decree allowing the claim of the H. J. Lewis Oyster Company in the sum of $25,091.69 is modified, and the entire claim is disallowed as against the firm assets of Stringer & Co., and is allowed as a claim only against the individual estate of G. Franklin Stringer.

The decree allowing the claim of H. Leroy Lewis in the sum of $6,706.65 is modified, and the entire claim is disallowed as against the firm assets of Stringer & Co., and is allowed as a claim only against the individual estate of G. Franklin Stringer.

HOUGH, Circuit Judge (dissenting). The legal principles stated in the majority opinion undeniably exist; their application to the case in hand depends on the facts. The facts, as stated by the court, rest only on the assertions made by the bankrupt; a dishonest man, who, by relegating his sister to a nonexistent individual estate, now succeeds in (substantially) preferring his later creditors, with whom he could have done business only on the financial foundation furnished by that sister.

I prefer the evidence found in the course of trade, the books of the bankrupt's firms, the payment of interest, and the testimony of his cashier. From these sources it is plain that Jewell & Stringer, or Stringer & Co., got and used, and in accordance with original intent increased their own resources with, Mrs. Lewis' property; that is enough in equity, and bankruptcy is equity. It is equally clear that Stringer & Co. assumed the liabilities of Jewell & Stringer; indeed, no one denies this as matter of fact. The bankrupt never thought of it; his trustee has contributed a theory of law (the Case v. Beauregard doctrine), inapplicable because it has not even the poor support of the bankrupt's testimony on which to rest.

Dissent is based on the foregoing view of the facts.